ALLSTATE INSURANCE COMPANY v. JOHNIE KEITH McCRAE, DONNIE LEE WALL, LEO ELLERBE, JR. AND ANTHONY ELLERBE

No. 552PA88

(Filed 5 October 1989)

1. **Insurance § 81 (NCI3d)— assigned risk insurance — Commissioner's waiver of notice requirement — exceeded authority**

The Court of Appeals correctly determined that the Commissioner of Motor Vehicles exceeded his authority by promulgating a rule that insurers were not required to notify DMV of the termination of automobile insurance policies in effect for six months or longer, effectively administering the statutory requirement out of existence since most, if not all, automobile insurance policies are written for six months or longer. N.C.G.S. § 20-309(e) and (f).

Am Jur 2d, Automobile Insurance §§ 21, 39.

2. **Insurance § 81 (NCI3d)— assigned risk insurance — no notice of termination to DMV — termination effective**

The failure of Allstate to notify DMV of a lapse in Ellerbe's coverage did not result in continued coverage of Ellerbe's vehicle under the Allstate policy. Only defective notice to the insured renders cancellation of the policy ineffective and extends the liability of the insurer. Allstate is obligated to notify DMV of Ellerbe's lapsed coverage, but there is a civil penalty for noncompliance. N.C.G.S. § 20-309(e).

Am Jur 2d, Automobile Insurance §§ 21, 39.

ON discretionary review of a decision of the Court of Appeals, reported at 91 N.C. App. 505, 372 S.E.2d 337 (1988), affirming a summary judgment in favor of defendants McCrae and Wall entered by John, J., on 15 October 1987 in Superior Court, RICHMOND County. Heard in the Supreme Court 12 September 1989.

*Nichols, Caffrey, Hill, Evans & Murrelle, by Paul D. Coates,* for plaintiff-appellant.

*Sharpe & Buckner, by Richard G. Buckner,* for defendant-appellee Johnie Keith McCrae.

*Page, Page & Webb, by Alden B. Webb,* for defendant-appellee Donnie Lee Wall.

WHICHARD, Justice.

Allstate Insurance Company (Allstate) issued a noncertified assigned risk policy of automobile liability insurance to Leo Ellerbe, Jr. (Ellerbe). The policy provided coverage for a 1967 Ford automobile from 13 August 1983 to 13 February 1984. Allstate mailed Ellerbe an offer to renew the policy on 5 January 1984. The offer specified that Ellerbe could continue his coverage only by paying a premium by the due date, 12 February 1984. Ellerbe did not pay the premium. Allstate did not notify the Division of Motor Vehicles (DMV) that Ellerbe's insurance policy was terminated, as required by N.C.G.S. § 20-309(e).

On 6 April 1984 defendants Johnie Keith McCrae (McCrae) and Donnie Lee Wall (Wall) were injured in an automobile accident while riding in the 1967 Ford. Ellerbe was driving the car, which was owned by Anthony Ellerbe. Wall and McCrae filed suit against Leo and Anthony Ellerbe seeking damages for injuries sustained in the accident. Allstate filed this separate declaratory judgment action to determine whether the Allstate policy provided coverage for the Ellerbe car at the time of the accident. Wall and McCrae counterclaimed seeking compensation under the policy. The trial court entered summary judgment in favor of defendants Wall and McCrae, and the Court of Appeals affirmed. We allowed discretionary review on 9 February 1989.

The issues are whether the governing statute required Allstate to notify DMV upon termination of Ellerbe's insurance coverage, and if so, whether its failure to give such notice resulted in continued coverage for Ellerbe's automobile. The version of N.C.G.S. § 20-309(e) in effect at the time of the dispute provided, in part:

Upon termination by cancellation or otherwise of an insurance policy provided in subsection (d), the insurer shall notify the North Carolina Division of Motor Vehicles of such termination as directed by the Commissioner of the Division of Motor Vehicles in accordance with subsection (f) of this section.

1979 N.C. Sess. Laws, ch. 1279, § 1 (codified at N.C.G.S. § 20-309(e) ). Subsection (f) provided: "The Commissioner shall administer and enforce the provisions of this Article and may make rules and regulations necessary for its administration . . . ." 1979 N.C. Sess. Laws, ch. 1279, § 1 (codified at N.C.G.S. § 20-309(f) ). The Assistant Director of DMV's Vehicle Registration Section testified in an af-

fidavit filed in this action that the Commissioner of DMV promulgated a rule requiring insurers to notify DMV within twenty days after termination for policies in effect for less than six months, but that no notice of termination was required for termination of policies in effect for six months or longer. Defendants note that because almost all, if not all, automobile insurance policies are written for six months or longer, the rule effectively abolished the statutory requirement of notification to DMV. Allstate argues that the legislature delegated discretion to the Commissioner to waive the notification requirement; therefore, it was under no duty to notify DMV of the lapse in Ellerbe's coverage.

[1] The Court of Appeals held that the Commissioner had exceeded his authority by promulgating a rule that in effect "administered" the notice requirement out of existence. It stated that N.C.G.S. § 20-309(e) and (f) "merely allowed the Commissioner to direct the *manner* by which the insurer should furnish such notice." *Allstate Ins. Co. v. McCrae*, 91 N.C. App. 505, 508, 372 S.E.2d 337, 338 (1988). The mandatory language of the statute "did not invest the Commissioner with authority to override" the notification requirement of the statute. *Id.* at 508, 372 S.E.2d at 339. We agree. As stated by the Court of Appeals:

> The purpose of the notification requirement is to enable the Division to recall the registration and license plate issued for a vehicle unless the owner makes some other provision for compliance with the Financial Responsibility Act. . . . To protect innocent third parties from the risks posed by uninsured motorists, our Legislature placed responsibility upon insurance companies to notify the Division of Motor Vehicles that an insured's coverage had ended. Notwithstanding the construction the Commissioner gave to it, we hold that subsection (e) required Allstate to notify the Division of the termination of Mr. Ellerbe's policy.

*Id.* at 508-09, 372 S.E.2d at 339.

[2] Having concluded that Allstate was required to notify DMV of the lapse in Ellerbe's coverage, we next consider whether its failure to notify resulted in continued coverage of Ellerbe's vehicle under the Allstate policy. Defendants argue, and the Court of Appeals held, that notification to DMV was a condition precedent to effective termination of the policy. It is true that defective notice of cancellation to the insured can result in ineffective ter-

mination of the policy and thus in continued coverage by the insurer. *Pearson v. Nationwide Mutual Ins. Co.*, 325 N.C. 246, 382 S.E.2d 745 (1989). This is not true, however, when the defective notice is directed to DMV. The Court of Appeals acknowledged that, under previous versions of the statute requiring notification to DMV, "North Carolina case law uniformly held that, under circumstances in which the insured's own act caused coverage to end, the insurer's notifying [DMV] was *not* a condition precedent to effective cancellation." 91 N.C. App. at 509, 372 S.E.2d at 339. Under these earlier versions of section 20-309(e), however, a distinction was made between policies terminated by the insurer and those terminated by the insured. Because the version of subsection (e) under consideration eliminated the distinction between insurer/insured terminations for notification purposes, the Court of Appeals reasoned, "[e]ither the General Assembly contemplated that notification by the insurer would be a prerequisite to cancellation, or else it considered that the insurer's failure to notify would be of no consequence to effective termination." *Id.* at 510, 372 S.E.2d at 339-40. The Court of Appeals "incline[d] toward the former view." *Id.* at 510, 372 S.E.2d at 340.

We disagree with the Court of Appeals' conclusion. The notice provision originally was enacted by 1957 N.C. Sess. Laws, ch. 1393, § 2, which provided:

Upon the termination of insurance by cancellation or failure to renew, notice of such cancellation or termination shall be mailed by the insurer to the Commissioner of Motor Vehicles not later than fifteen (15) days following the effective date of such cancellation or other termination.

We construed this provision in *Nixon v. Insurance Co.*, 258 N.C. 41, 127 S.E.2d 892 (1962). The plaintiff there argued that cancellation of her noncertified assigned risk policy was ineffective because defendant insurer did not notify DMV of the lapsed coverage until after plaintiff was involved in an automobile accident. In addition, the notice to DMV stated an incorrect date of cancellation. As here, the initial notice to the insured of the policy's termination complied with statutory requirements. The notification statute then in effect, like the version now under consideration, did not distinguish between insurer/insured termination for purposes of notification to DMV. Construing the earlier statute, this Court stated:

Neither defective notice, nor failure to give notice, *to the Commissioner* affects the validity or binding effect of the cancellation; the notice to the Commissioner serves an entirely different purpose [from notice to the insured]. The statute provides for notice to the Commissioner "upon the termination of insurance by cancellation." Hence, the policy is terminated before notice is sent to the Commissioner. Notice to the Commissioner *follows* cancellation. Notice of cancellation could not be mailed to the Commissioner if there had been no cancellation.

*Id.* at 43, 127 S.E.2d at 894. *Accord Levinson v. Indemnity Co.,* 158 N.C. 672, 674, 129 S.E.2d 297, 300 (1963). This reasoning is equally applicable here. As in the earlier version of the statute, N.C.G.S. § 20-309(e) (1983) predicates notice to DMV "[u]pon termination" of the policy. Termination thus necessarily precedes notification.

The notification provision was amended in 1963 to read: "No insurance policy provided in paragraph (d) may be terminated by cancellation or otherwise by the insurer without having given the North Carolina Motor Vehicles Department notice of such cancellation fifteen (15) days prior to effective date of cancellation." 1963 N.C. Sess. Laws, ch. 964, § 1. It is thus apparent that the legislature is capable of creating an express condition precedent to termination if it so desires.

The statutory prerequisite of notice to DMV before termination was short-lived, however. In 1965 the above provision was amended to add the following sentence to the 1963 version: "Where the insurance policy is terminated by the insured the insurer shall immediately notify the Department of Motor Vehicles that such insurance policy has been terminated." 1965 N.C. Sess. Laws, ch. 272, § 1. This is the only version of the statute that has prescribed different notification procedures depending on whether the insurer or the insured terminated the policy. In *Insurance Co. v. Cotten,* 280 N.C. 20, 185 S.E.2d 182 (1971), decided under the 1965 version of the statute, the insured failed to renew his policy by paying the premium. The insurer did not notify DMV immediately of the lapse in coverage, as required. The Court looked to the dual notice requirements in the statute and concluded that when the insured terminated the policy by failing to renew, the insurer's delay in notifying DMV would not defeat termination of coverage. *Id.* at 29, 185 S.E.2d at 188.

In 1975 the General Assembly again amended section 20-309(e) to impose the same requirement for notification to DMV regardless of whether the insurer or insured terminated the policy. In either case, the insurer was required "forthwith" to notify DMV of the termination. At this time the statute also was amended to provide for a civil penalty for noncompliance:

> Any person, firm or corporation failing to give notice of termination as required herein shall be subject to a civil penalty of two hundred dollars ($200.00) to be assessed by the Commissioner of Insurance upon a finding by the Commissioner of Insurance that good cause is not shown for such failure to give notice of termination to the Department of Motor Vehicles.

1975 N.C. Sess. Laws, ch. 302, § 1. In 1979 the provision considered here was enacted to require notification to DMV as directed by the Commissioner of DMV. 1979 N.C. Sess. Laws, ch. 1279, § 1.

The Court of Appeals surmised a legislative intent to create a condition precedent to effective termination from the return to identical notice requirements, regardless of whether the insurer or the insured terminated coverage. We glean no such intent from this change in the statute. The absence of any direct legislative action to change the result reached in *Cotten*, coupled with the provision for a civil penalty for noncompliance with the notification requirement, lead us to conclude that the General Assembly did not intend that failure to notify DMV would preclude effective termination of a policy. Thus, coverage of the Ellerbe automobile terminated effectively on 14 February 1984.

We recently discussed with approval the different results that follow when the insurer gives defective notice to the insured, as compared with defective notice to DMV. *Pearson*, 325 N.C. at 257-258, 382 S.E.2d at 750-751. We said: "Central to our holding in *Nixon* and *Cotten* was that the notice under scrutiny was the notice required to be sent to the then Department, or Commissioner, of Motor Vehicles rather than the notice required to be sent to the insured." *Id.* at 257, 382 S.E.2d at 751. Only defective notification to the *insured* renders cancellation of the policy ineffective and extends the liability of the insurer. *Id.* at 257, 382 S.E.2d at 751.

The Court of Appeals expressed concern that the remedial purpose of the Financial Responsibility Act "is vitiated if the notification requirement of the 1983 statute is read in such a way as

to have allowed an uninsured vehicle to operate on our roads without an insurance company being under any effective obligation to alert the Division of lapsed coverage." 91 N.C. App. at 510, 372 S.E.2d at 340. The Court continued:

> We do not believe the Legislature intended the notification provision to have been a nullity, allowing insurance companies to ignore subsection (e) without fear of liability. Nor do we believe that the Legislature contemplated that subsection (e) would be read in such a way as to expose innocent individuals to the risk of injury without means of adequate compensatory redress.

*Id.* As discussed above, Allstate was obligated to notify DMV of Ellerbe's lapsed coverage. The notification requirement was not rendered a nullity by noncompliance, however, because N.C.G.S. § 20-309(e) provided a civil penalty therefor. Defendants argue that this provision is inadequate to motivate insurance companies to comply with the statute. That argument should be addressed to the General Assembly. By enacting the civil penalty without expressly overturning our prior interpretation of the requirement of notification to DMV, the General Assembly appears to have intended that the civil penalty be the exclusive sanction for failure to give DMV the required notice of termination. This interpretation is bolstered by the title to the chapter enacting the civil penalty: "AN ACT TO REWRITE G.S. 20-309(E) TO PROVIDE FOR NOTICE OF TERMINATION RATHER THAN INTENT TO TERMINATE BY CARRIERS OF MOTOR VEHICLE LIABILITY INSURANCE COVERAGE *AND PENALTY FOR NONCOMPLIANCE.*" 1975 N.C. Sess. Laws, ch. 302, § 1 (emphasis added).

Accordingly, the decision of the Court of Appeals is reversed. The case is remanded to the Court of Appeals with instructions to remand to the Superior Court, Richmond County, for entry of summary judgment for plaintiff.

Reversed and remanded.